### DOANE v. ALLEN.

1. AFFIDAVITS—EQUITY PRACTICE—TITLE OF CAUSE.

   An affidavit in opposition to a motion to dissolve a preliminary injunction, not entitled, but annexed to a paper cover bearing the proper title of the cause, was sufficiently identified to be considered. Chancery Rule 15, Circuit Court Rule 37*b*.

2. INJUNCTION—PRELIMINARY ORDER—VENDOR AND PURCHASER.

   A tenant of farm lands, on which he had planted crops, was entitled to have a preliminary injunction remain in force as against a purchaser of the premises, who, complainant claimed, had received notice of the lease before buying the land, and who threatened to turn in his cattle upon it and dispossess complainant, also claiming to have gone into possession himself, and to have continued in possession until the bill was filed.

Appeal from Sanilac; Beach, J. Submitted October 17, 1912. (Docket No. 142.) Decided November 8, 1912.

Bill by Silas Doane against Carrie Allen and another for an injunction to restrain a threatened trespass and other relief. From an order denying defendants' motion to dissolve a temporary injunction, defendants appeal. Affirmed.

*H. O. Babcock,* for complainant.

*Gates & Simonson,* for defendants.

KUHN, J. An appeal is taken from an order denying a petition to dissolve an injunction which has been issued in this cause.

The bill of complaint alleges that the complainant on the 11th day of October, 1909, obtained a lease for one year of 40 acres of land in the county of Sanilac, in this State, and further alleges:

"That your orator occupied and cropped said premises for the years 1910 and 1911, paying $100 per year rental in advance according to the terms of said lease; that during the fall of 1911 your orator, continuing the occupancy and rental of said premises, put in five acres of wheat and two acres of rye on the said premises and on January 20, 1912, paid the sum of $100, being the rent in full for said land under the terms of said lease for the year ending October 15, 1912, taking a receipt therefor, a copy of which is as follows:

"'SANDUSKY, MICH.
"'Jan. 20, 1912.

"'Received in full $100. One hundred Dollars, when paid. For rent of 40 acres from Silas Doan.

"'THOS. ALLEN.'"

"That Thomas Allen is the agent of William J. Allen, and that your orator has transacted all of the business in connection with the rental of said land with Thos. Allen, the agent of said William J. Allen; that your orator has performed all the conditions and covenants mentioned in said lease to be done for or on his behalf, and that under the terms of such lease your orator is entitled to the undisturbed possession and use and occupation of said premises, until the 15th day of October, 1912.

"That there are 14 acres of meadow upon said premises which with the wheat and rye your orator has sown thereon, and the use and occupation of the remainder of said premises yet to be worked and cropped, said use and occupation is worth to your orator upwards of $600 above the necessary expense and labor in caring for, harvesting, and marketing the crops which your orator expects to reap and harvest from the said above-described land; that on or about the 20th day of February, 1912, one Carrie Allen and Alexander Allen, who are made parties defendant to this your orator's bill of complaint, claim to have purchased said land from the said William J. Allen, the owner thereof; that the possession of your orator of said premises have been known to the above-named defendants Carrie Allen and Alexander Allen, who are husband and wife; that the said defendants resided within one-half mile of the above-described land, and own land adjoining it, and saw your orator while he was in the act of putting in the wheat and rye now upon said land above described, and that said defendants were informed and

knew at the time they purchased the said above-described land that your orator had paid the rent for the year ending October 15, 1912, and that he had put in the five acres of wheat and two acres of rye above described; that there are no buildings upon the above-described land.

"That the above-named defendants now threaten to turn their cattle in upon the crops and meadow of your orator upon said land, and have told your orator that, if he does not leave the said premises for their use and occupation, during the summer of A. D. 1912 they will turn their cattle in upon the said land, and destroy the crops and grass of your orator; that the said defendants have interfered with the possession of your orator of the said premises; that on, to wit, the 25th day of April, A. D. 1912, said defendants committed trespass upon the said premises, and removed a plow and harrow belonging to your orator from said premises which your orator was then intending to use in cultivating the unseeded portion thereof; that the said defendants have locked up the gates leading from the highway to said premises, torn out the culverts, and forbid your orator entering said premises and otherwise annoying your orator and interfering with his rights; that your orator resides a distance of 1½ miles from the above-described premises, and it is very inconvenient for your orator to continually watch his crops growing thereon, and that it would be very expensive for your orator to so watch said crops to prevent them being destroyed by the defendants' cattle; that the said defendants above named reside on an adjoining 40 acres of land, and that it is their intention expressed to your orator as aforesaid to turn their cattle upon said premises during the nighttime when it would be impossible for your orator to look after the same; that your orator fears that said defendants Carrie Allen and Alexander Allen will execute their threat, and, unless restrained by the order of this court, will destroy the grass, wheat, and rye above mentioned, and also destroy any other crop your orator may plant thereon.

"That if said defendants do execute their threat, and are not restrained from trespassing upon the said premises, irreparable mischief and injury will be done to your orator; that your orator is without remedy except in a court of equity where matters of this kind may be fully adjudicated; that since the 1st day of April, 1912, the said Carrie Allen and Alexander Allen have committed several

acts of trespass upon the said above-described land, for each one of which your orator would have an action, and that, if said above-described defendants do what they say they will and carry their threats into execution and turn their cattle in upon said premises, your orator, in order to protect his rights, would be compelled to resort to numerous suits of law; that your orator resorts to a court of equity for the purpose of preventing a multiplicity of suits, and also for the purpose of preventing irreparable injury to your orator.

"Your orator further shows on information and belief that the said Alexander Allen has no property and is execution proof, that a judgment for damages or costs could not be collected against him, and that the defendant Carrie Allen owns some property in her own right, but that it is heavily mortgaged, and your orator fears and alleges the truth to be that she is not collectible, and has no property subject to execution, and that, unless the said defendants are restrained as herein prayed for, your orator will be damaged and lose a large sum of money, to wit, the sum of $600 or upwards."

The defendants filed an answer denying the principal allegations of the bill of complaint, and state:

"These defendants admit: That on the 13th day of March, 1912, defendant Carrie Allen purchased the land described in paragraph two of the bill of complaint of the owner, William J. Allen, paying therefor the just and full sum of $3,000, and receiving therefor a warranty deed, which said deed was duly recorded in the office of the register of deeds of said county on the 30th day of March, A. D. 1912, in liber 129 of Deeds, on page 359, a true copy of said deed being hereto annexed, marked 'Exhibit A,' and made a part hereof. That, after receiving said deed, these defendants went into possession of said land, and commenced to prepare the same for cropping the land for the season, cleaning up the rubbish, cutting down trees that needed removing, for the successful cropping of said land, fixed up the fence enclosing the land, put on a gate, and took such steps as a thrifty farmer would naturally take in and about said land at the season of the year. And these defendants went into the possession as aforesaid after receiving said deed, and remained in the full and absolute possession of said land until ousted

by the preliminary injunction issued by this court in this cause. That on the 29th day of April, 1912, and for the 30 days immediately preceding that day, these defendants were in the full, complete, and absolute possession of said premises, and so remained, and such possession has not been disturbed since the said 29th day of April, 1912, and since the service of the injunction in this case said complainant broke into said premises and remained thereon without right, but under the guise of acting under said injunction for several hours. And, in order to break into said premises, said complainant forcibly opened a gate that had been before and was at that time securely locked by these defendants. These defendants having maintained their possession at all times after they were put into possession of said premises by their grantor, William J. Allen, in the month of March, 1912."

This sufficiently states the claims of parties so as to understand the questions before us.

The complainant filed an affidavit on May 23, 1912, which affidavit, on its face, is not entitled in the cause, but in the original returns it appears that on the cover to which it is attached appears the cause and the following: "Affidavits in opposition to motion for dissolution." The petition to dissolve was not filed until June 1, 1912, but we will assume that the affidavit in question was considered by the judge on the hearing of the petition to dissolve. Counsel for defendants in their brief contend that this affidavit is of no value or effect because it was not entitled in the cause, relying upon Circuit Court Rule 37 (*b*) which provides:

"All papers, except process and pleadings by which the cause is commenced, shall be entitled in the court and cause, and the plaintiff's name shall be placed first. Provided, that affidavits annexed to and referring to another paper which is properly entitled in the court and cause need not be entitled."

By Chancery Rule 15 this rule is made applicable to chancery cases. In the case of *Beebe* v. *Morrell*, 76 Mich. 119 (42 N. W. 1121, 15 Am. St. Rep. 288), this court held:

"If there be no suit pending at the time, of course, the affidavit must not be entitled. If a suit be pending, and the affidavit is entitled in a suit not pending, the affidavit is a nullity.    *    *    *

"Our attention has not been called to any authorities, in our own State or elsewhere, where it has been held that an affidavit filed in a pending suit not entitled is a nullity. The inquiry in such cases is, Has the affidavit been fully identified as having been filed in that cause? If it has, then the want of the formality of a title is of no consequence, since the title is for the purpose of identifying the suit in which the affidavit is designed to be used.    *    *    * In civil proceedings courts may, and often do, refuse to hear affidavits that are not properly entitled in a cause read, because practice requires papers read in a cause to be correctly entitled."

It is contended that this case is not applicable, because the decision was had before the rules referred to were adopted. It seems to us, however, that the purpose of the rule is that it should be possible to easily identify all papers filed in any cause as connected therewith. As the affidavit in question is attached to a cover properly entitled in the cause, it cannot be said that it could not easily be identified as connected with the cause, and we therefore consider it a substantial compliance with the rules. The affidavit should not be held to be a nullity for that reason.

More seriously, however, counsel contend that the preliminary writ of injunction is void, because it undertakes to change possession of the premises without a hearing on the merits and by an *ex parte* proceeding to decide the entire controversy between the parties.

Complainant contends that the injunction should stand to prevent irreparable injury, to restrain threatened trespass upon a clear right of the complainant, to prevent a multiplicity of suits, and because complainant has no other adequate remedy. There is no dispute in this case that the complainant was in possession of the premises, undisturbed for a period of three years. The question of the validity of the lease, the authority of the agent, and

other matters in controversy can properly be determined at the final hearing. Upon the allegations made in the bill, it seems to us that the court had the power to issue the injunction and to continue it until the final hearing. An injunction is the appropriate remedy as to those holding adverse claims and even against trespassers in case of irreparable injury. 2 Story's Equity Jurisprudence, § 918; Puterbaugh's Michigan Chancery Practice (3d Ed.), p. 614. The complainant having been in peaceable possession of the premises under color and claim of right, and because of the fact that, there being no buildings on the land, it was impossible for him to be at all times in actual occupation, it is not consistent with legal policy to allow him to be forcibly ejected without legal process, and before he can have his rights determined in court. This court has held that the court of chancery has no more power than any other to condemn a man unheard, and to dispossess him of property *prima facie* his, and hand over its enjoyment to another on an *ex parte* claim to it. *Arnold* v. *Bright*, 41 Mich. 207 (2 N. W. 16). It must necessarily follow that it should have the power to prevent a person with a *prima facie* claim of legal possession from being dispossessed without being heard and given the opportunity to establish his rights. In the instant case the refusal of the circuit judge to continue the injunction would have resulted in turning the complainant out of the possession of the premises, of which he was *prima facie* in legal possession under a lease.

Order is affirmed, with costs.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.